IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION AT CHICAGO

| ARLENE A. JACKSON, | ) | |
|---|---|---|
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Civil Action Number _____ |
| MUSIC INSTITUTE OF CHICAGO, | ) ) ) ) | Judge _____ |
| *Defendant*. | ) | Damages Claimed _____ |

**PLAINTIFF'S VERIFIED COMPLAINT WITH DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, ARLENE A. JACKSON (hereinafter "Jackson" or "Employee"), by and through her attorneys COLE SADKIN, LLC, and for her Complaint of employment discrimination based upon race against the Defendant, Music Institute of Chicago (hereinafter "MIC" or "Employer"), states as follows:

**NATURE OF CLAIMS**

1. This is an action for monetary damages, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC § 2000e–2(a), and the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq*. ("IHRA").

2. This action is to address the Defendant's unlawful employment practices involving employment discrimination based upon race.

3. Plaintiff alleges that the Defendant engaged in a pattern and practice of employment discrimination based upon her race regarding her hiring and initial job offer.

1

4. Further, Plaintiff alleges that the Defendant engaged in a pattern and practice of discrimination and the enaction of same regarding the intentional and systemic manner of denying the Plaintiff the same initial and current wage as its previous white employees.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims stated herein pursuant to 42 USC § 2000e–2(a).

6. This Court also has supplemental jurisdiction over the IHRA claim pursuant to 28 U.S.C. §1367 regarding the degradation of the Plaintiff's civil rights.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this District.

## PARTIES

8. At all relevant times, Plaintiff is an African American woman currently employed by the Defendant.

9. At all times relevant, the Plaintiff is and was a resident of Evanston, Cook County, Illinois.

10. Further, at all relevant times, Plaintiff is and was an employee of the Defendant, working as the Human Resources Administrator and currently, Manager, at Employer's main campus location of 1702 Sherman Avenue, Evanston, Cook County, Illinois 60201.

11. At all relevant times herein, the Defendant is and was the employer as defined by all applicable laws and regulations and employs the requisite number of employees.

## ADMINISTRATIVE REQUIREMENTS

12. Plaintiff has complied with all statutory and administrative prerequisites in advance of filing this action.

13. On June 12, 2017, Plaintiff filed a timely cross-claim of discrimination based upon race with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") against the defendant, filing of these claims satisfies 42 U.S.C. § 2000e-5(b) and (e), see attached as **Exhibit 1.**

14. The Plaintiff's charge was filed within the timeframe set by the EEOC and IDHR, within 300 and 180 days, respectively, after the alleged unlawful employment practices occurred.

15. On or about September 17, 2019, upon request from Plaintiff's counsel, the EEOC issued a Notice of Rights to Sue, *see* **Exhibit 1.**

16. This complaint follows the EEOC's regulations, and thus is being filed within ninety days of issuance of the Notice of Rights to Sue.

## FACTUAL ALLEGATIONS

17. Plaintiff was employed by Defendant beginning on or about January 26, 2016 as a part-time Human Resources Administrator at their main campus location in Evanston, Illinois.

18. On or about January 19, 2016, Rick Rohrer, Vice President of Finance and Operations, offered Plaintiff a starting base salary of twenty-five dollars ($25.00) per hour at twenty-four (24) hours per week. Plaintiff requested a higher base salary. Rohrer informed Plaintiff that Employer could only afford the base salary that was offered, and that there was no room in the budget to negotiate.

19. According to Rohrer, Plaintiff was the "most qualified" person that he had interviewed and stated "he hoped she would accept the position". However, despite Jackson being

3

"the most qualified" interviewee, the budget allotment was misrepresented when offering her initial salary.

20. Further, it was also revealed to Plaintiff, two of the three most immediate predecessors were Caucasian and/or of white European descent, the third was biracial, presumably of white European and African-American ethnicity.

21. As a part-time employee, the Plaintiff was not allotted the same benefits as her full-time colleagues, including but not limited to healthcare, sick leave, vacation time, and/or other benefits given to employees who work within the function of full-time status.

Employer Offers Plaintiff Additional Hours Without Compensation Increase

22. A short time after being hired by the defendant, on or about February 2, 2016, the Plaintiff was approached by Mark George ("George"), President and CEO of MIC, who told her despite her being a part-time employee limited to twenty-four (24) hours per week; that she could "work extra hours if [she] you wanted to," in order to "get caught up." On or about February 2, 2016, George offered Plaintiff the opportunity to work additional hours in order to "get caught up".

23. Beginning in or around the above date, pursuant to her conversation with George, Plaintiff began working approximately forty (40) hour work weeks, but she was treated differentially regarding the benefits allotted other full-time non-African-American employees. Plaintiff was paid less than her white predecessors in her role. Specifically, Plaintiff earned twenty-five dollars ($25) per hour and was considered part-time despite working an average of forty (40) hours per week.

24. From the onset of Plaintiff's initial conversations with George and Rohrer, up and until approximately June 2016, the Plaintiff continued with her attempts to address and redress her

4

concerns about the pay disparity regarding her white predecessors. Specifically, Barbara Mehafferty ("Mehafferty"), and Sandra Ciano ("Ciano"), paid thirty-six dollars ($36.00) per hour and thirty-three dollars ($33.00) per hour, respectively according to MIC's internal payroll system, Paylocity.

25. However, despite Plaintiff's numerous attempts over several months, neither Rohrer nor George formally addressed Plaintiff's concerns regarding compensation. Upon information and belief of Plaintiff, conversations regarding pay discrepancy concerns were held with either Rohrer or George multiple times between February and June 2016, specifically:

- February 3, 2016;
- February 23, 2016;
- March 7, 2016;
- March 23, 2016;
- March 28, 2016;
- April 2016; May 2016;
- June 2016.

July 2016 Employer Approval to Address Plaintiff's Job Status

26. In or about June 2016, George purportedly received the greenlight from the Board of Trustees to increase Plaintiff's salary from twenty-five dollars ($25.00) to thirty dollars ($30.00) per hour and to convert her to full-time status.

27. At that time, George informed Plaintiff that the position title would be changed from Human Resources Administrator to Human Resources and Business Manager. The new job title included a dramatic increase in job responsibilities, specifically, that of vendor relations and management. George informed Plaintiff that he was taking 25% of Rohrer's responsibilities as Vice President of Finance and Operations (because "vendor relations was taking up too much of Rohrer's time") and giving them to her in the role of Human Resources and Business Manager. This development was quite a surprise to Plaintiff, as Rohrer was a member of senior management

5

and paid accordingly. Plaintiff expressed her surprise to George, but did not complain about the additional responsibilities because she was hopeful that the addition of a significant portion of Rohrer's responsibilities being assigned to her, would include a comparable significant increase in salary.

28. In or about June 2016, following the board approval for the pay increase and full-time status, George instructed Plaintiff to propose a salary offer, and said he would do the same. Plaintiff presented George with the following compensation package ("the offer").

- Annual salary between eighty thousand dollars ($80,000) and ninety thousand dollars ($90,000);
- Sign-on bonus of ten thousand dollars ($10,000), grossed up;
- Three (3) weeks' vacation; and
- Professional Development opportunities

29. George did not accept Plaintiff's offer. Instead, he returned the following counteroffer:

- Annual salary of sixty-two thousand, five hundred dollars ($62,500);
- Three (3) weeks' vacation; and
- Professional Development opportunities.

30. The counteroffer, although more palatable than her initial salary and package was still considerably less than the base salary of her white predecessors.

31. Although still disparate, Plaintiff accepted George's counter-offer due to her need for stable employment. Plaintiff also asked George about the disparity in the new salary offer and that of the previously mentioned two Human Resources predecessors, and indicated that she did not think it was fair for her to take on additional responsibilities for less money than these two individuals.

32. George's response was that $62,500 was all that he was going to offer and that while he hoped she would take it, if she thought she could get more money at another organization he would give her "a glowing letter of recommendation."

July 2016 Employer Rejection of Full-Time Status

33. Although Plaintiff did receive the pay increase effective on or about July 1, 2016, she was informed by George that the position could not be converted to full-time until September 1, 2016, the start of the new fiscal year.

34. On or about September 1, 2016, Plaintiff's position was converted to full-time status and her official title became Human Resources and Business Manager.

35. After her conversion, Plaintiff became an even more similarly situated employee as in comparison to that of her white predecessors, yet her pay rate was still not equivalently reflected.

36. Upon conversion and to date, Plaintiff is and was paid thirty dollars ($30) per hour starting on September 1, 2016. This salary was increased to thirty dollars and seventy-seven cents ($30.77) per hour on or about September 1, 2017, and increased to thirty-one dollars and 1 cent ($31.01) on September 1, 2019. Still, former white employees Mehafferty and Ciano were paid considerably more.

37. On or about January 6, 2017, Plaintiff met with the newly employed replacement for Rohrer, Paul Watford ("Watford"), Vice President and Chief Financial Officer, for a 45-day performance review.

38. During her review with Watford, Plaintiff informed him of her pay disparity concerns, and that George nor Watford's predecessor Rohrer had attempted to close the significant

7

gap in pay disparity since her conversion to full-time; however and unfortunately, as with Plaintiff's previous attempts to address concerns regarding compensation, it was to no avail.

39. Plaintiff has been damaged as a result of defendant's illegal and unlawful conduct. Specifically, Plaintiff is owed back-pay from January 19, 2016 through October 31, 2019 for the pay differential (twenty-five dollars ($25) per hour compared to thirty-six dollars ($36) per hour) estimated to be a combined loss of eighty-two thousand, five hundred dollars ($82,500). In addition, Plaintiff is owed front-pay from November 1, 2019 through October 31, 2021 (estimated) for the pay differential (thirty-one dollars ($31) per hour compared to thirty-six dollars ($36) per hour) estimated to be a combined loss of twenty thousand dollars ($20,000).

### COUNT I - RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, 1964

40. Plaintiff has had to retain the services of the undersigned counsel and has agreed to pay all reasonable attorney's fees.

41. Plaintiff re-states and re-alleges every allegation contained in Paragraphs 1-40 of this complaint as though set forth more fully herein.

42. At all relevant times regarding this action, Plaintiff is a protected employee within the meaning of Title VII of the Civil Rights Act.

43. Plaintiff is and was always relevant herein, an African American woman employed by the defendant.

44. Thusly and pursuant to the protections of this statute, the defendant is prohibited from engaging in discriminatory practices based upon race, relevant to hiring, employee compensation, terms and conditions of employment, privileges of employment, and discharge.

45. The defendant has violated Title VII of the Civil Rights Act with regard to Plaintiff, insomuch as it has unlawfully disregarded the rights of Plaintiff to be situated similarly regarding

job status, and to be paid equally and fairly, and in the same manner as former white employees in her role.

46. Based upon the above, the defendant willfully and intentionally discriminated and continues to discriminate against Plaintiff based upon her race.

47. As a direct and proximate result of defendant's actions and conduct, the Plaintiff has and continues to suffer, lost wages and lost benefits, as well as mental and emotional anguish, including but not limited to humiliation, embarrassment, stress, and anxiety.

48. Due to the above losses experienced by Plaintiff, she is entitled to an award for monetary damages and other relief as deemed appropriate by this court.

49. Further, defendant's unlawful action in violation of Title VII of the Civil Rights Act is malicious and intent on damaging Plaintiff, as same has been conducted in conscious disregard of Plaintiff's civil rights, which entitles Plaintiff to an award of exemplary and/or punitive damages.

WHEREFORE, the above and foregoing reasons, Plaintiff, ARLENE A. JACKSON, respectfully requests that this court enter a judgment in her favor and against the Defendant, MUSIC INSTITUTE OF CHICAGO, for compensatory damages, in an amount to be proven by the court; punitive damages, in an amount to be determined by the court; Plaintiff's attorney's fees and costs in connection with this cause of action; and that Plaintiff be awarded such other further relief that this honorable court deem appropriate and just under the circumstances.

**COUNT II – RACE DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT**

50. In the alternative and without prejudice to any of Plaintiff's other claims, Plaintiff re-states and re-alleges every allegation contained in Paragraphs 1-40 of this complaint as though set forth more fully herein.

51. At all relevant times herein, Plaintiff was a protected person under the statute of the IHRA, due to her race and ethnicity as an African American woman.

52. Pursuant to the protections of this statute, the defendant is prohibited from engaging in discriminatory practices based upon race, relevant to hiring, employee compensation, terms and conditions of employment, privileges of employment, and discharge.

53. The defendant has violated IHRA regarding Plaintiff, insomuch as it has unlawfully disregarded the rights of Plaintiff to be situated similarly regarding job status, and to be paid equally and fairly, and in the same manner as former white employees in her role.

54. Based upon the above, the defendant willfully and intentionally discriminated and continues to discriminate against Plaintiff based upon her race.

55. As a direct and proximate result of defendant's actions and conduct, the Plaintiff has and continues to suffer, lost wages and lost benefits, as well as mental and emotional anguish, including but not limited to humiliation, embarrassment, stress, and anxiety.

56. Due to the above losses experienced by Plaintiff, she is entitled to an award for monetary damages and other relief as deemed appropriate by this court.

57. Further, defendant's unlawful action in violation of the IHRA is malicious and intent on damaging Plaintiff, as same has been conducted in conscious disregard of Plaintiff's civil rights, which entitles Plaintiff to an award of exemplary and/or punitive damages.

WHEREFORE, the above and foregoing reasons, Plaintiff, ARLENE A. JACKSON, respectfully requests that this court enter a judgment in her favor and against the Defendant, MUSIC INSTITUTE OF CHICAGO, for compensatory damages, in an amount to be proven by the court; punitive damages, in an amount to be determined by the court; Plaintiff's attorney's fees

and costs in connection with this cause of action; and that Plaintiff be awarded such other further relief that this honorable court deem appropriate and just under the circumstances.

### COUNT III – VIOLATION OF THE IRS' EMPLOYER SHARED RESPONSIBILITY PROVISIONS

58. In the alternative and without prejudice to any of Plaintiff's other claims, Plaintiff re-states and re-alleges every allegation contained in Paragraphs 1-40 of this complaint as though set forth more fully herein.

59. Pursuant to the provisions and at all applicable times, the defendant, has and had fifty (50) or more full-time employees.

60. Thus, at all applicable times, MIC is and was classified as an Applicable Large Employer ("ALE") within the meaning of the IRS' employer shared responsibility provisions.

61. According to the IRS' provisional requirements, an employer is considered an ALE by meeting the below requirements:

> If an employer has at least 50 full-time employees, including full-time equivalent employees, on average during the prior year, the employer is an ALE for the current calendar year, and is therefore subject to the employer shared responsibility provisions and the employer information reporting provisions.

62. When Plaintiff began working a forty (40) hour work week in or about February 2016, according to the IRS' provisional requirements, Plaintiff should have been considered a full-time employee and thusly offered provisional benefits by the employer, including healthcare.

63. However, this was not the case, the defendant, knowingly refused to treat and convert the Plaintiff to full-time at the above point, even though she was otherwise working and functioning as a full-time employee.

64. Further substantiating defendant's willful negligence regarding IRS provisional requirements is the fact that it took approximately seven (7) months from approximately February 2016 until September 2016 to convert Plaintiff to full-time.

65. Thus, until Plaintiff's full-time conversion was complete, the defendant was in violation of the IRS' provisional requirements.

66. Therefore, as a result of the above, the defendant can and should be subjected to fines and penalties as a result of its intentional violations of IRS provisions.

WHEREFORE, the above and foregoing reasons, Plaintiff, ARLENE A. JACKSON, respectfully requests that this court enter a judgment in her favor and against the Defendant, MUSIC INSTITUTE OF CHICAGO, for compensatory damages, in an amount to be proven by the court; punitive damages, in an amount to be determined by the court; Plaintiff's attorney's fees and costs in connection with this cause of action; and that Plaintiff be awarded such other further relief that this honorable court deem appropriate and just under the circumstances.

### COUNT IV – BREACH OF CONTRACT REGARDING EMPLOYER, MIC'S NON-DISCRIMINATION POLICY

67. In the alternative and without prejudice to any of Plaintiff's other claims, Plaintiff re-states and re-alleges every allegation contained in Paragraphs 1-40 of this complaint as though set forth more fully herein.

68. At all relevant times herein, the Plaintiff and defendant were and are parties to an Employer – Employee relationship originated by MIC's Offer Letter.

69. Under the terms of employment, the defendant is bound to a non-discrimination policy in reference to employment practices.

70. Pursuant to the defendant's own website, the "Notice of Non-Discriminatory Policy as to Employment" (hereinafter "the policy") states as follows:

> It is the policy of the Music Institute of Chicago to provide Equal Employment Opportunity to people in all aspects of employer/employee relations without discrimination because of race, color, religious creed, gender, sexual orientation, parental status, national origin, citizenship, ancestry, marital status, military discharge status, source of income, housing status, age or disability. This policy affects decisions regarding hiring, compensation,

benefits, terms and conditions of employment, opportunities for promotion, training and development, transfer and other privileges of employment.

71. With respect to the above, the defendant engaged in a pattern and practice of race discrimination in their initial hiring and compensation concerning the Plaintiff.

72. With respect to the above, the defendant has and continues to engage in willful race discrimination regarding compensation in reference to the Plaintiff, same is in violation of its own policy.

73. Thusly, due to the blatant and obvious nature of the defendant's violations of its own policy and Plaintiff's rights, the only appropriate remedy is for her to recover damages.

WHEREFORE, the above and foregoing reasons, Plaintiff, ARLENE A. JACKSON, respectfully requests that this court enter a judgment in her favor and against the Defendant, MUSIC INSTITUTE OF CHICAGO, for compensatory damages, in an amount to be proven by the court; punitive damages, in an amount to be determined by the court; Plaintiff's attorney's fees and costs in connection with this cause of action; and that Plaintiff be awarded such other further relief that this honorable court deem appropriate and just under the circumstances.

## COUNT V – INJUNCTIVE RELIEF

74. In the alternative and without prejudice to any of Plaintiff's other claims, Plaintiff re-states and re-alleges every allegation contained in Paragraphs 1-40 of this complaint as though set forth more fully herein.

75. In order to be entitled to an injunction as relief, the party seeking an injunction must show: "(1) a clear and ascertainable right in need of protection; (2) that he or she will suffer irreparable harm if the injunction is not granted; and (3) that there is no adequate remedy at

law." *Kopchar v. City of Chicago*, 395 Ill.App.3d 762, 772 (1st Dist. 2009). *See also Hasco, Inc. v. Roche*, 299 I11.App.3cl 118, 126 (1st Dist. 1998).

      76.    According to applicable state and federal laws, Plaintiff has an unambiguous, protectable right to be treated equitably regarding the employment process, including, hiring, placement, and compensation.

      77.    Plaintiff has and will continue to be irreparable harmed if the Defendant does not immediately refrain from further violating Plaintiff's rights by denying her an equitable pay adjustment.

      78.    Plaintiff has a likelihood of success on the merits as records show that the Employer has ignored its obligations to hire, place, and pay Plaintiff equitably and in-line with that of her non-African American former and current colleagues.

WHEREFORE, the above and foregoing reasons, Plaintiff, ARLENE A. JACKSON, respectfully requests that this court enter a judgment in her favor and against the Defendant, MUSIC INSTITUTE OF CHICAGO, in that:

      A. Entry of a temporary restraining order, preliminary injunction, and a permanent injunction, barring the Defendant, MUSIC INSTITUTE OF CHICAGO from wrongfully and continuously interfering with Plaintiff's civil rights and bars the defendant from engaging in further illegal conduct as Plaintiff remains a current employee; and

      B. for any and all other relief that this honorable court deems appropriate, equitable, just, and proper under the circumstances.

Dated this 11th day of November 2019            Respectfully Submitted,

                                                                  By: /s/ Mason S. Cole
**COLE SADKIN, LLC**                                   *One of Plaintiff's Attorneys*

Mason S. Cole
Dean J. Tatooles
Connor P. Singleton
20 South Clark Street, Suite 500
Chicago, Illinois 60603
(312) 548-8610
mcole@colesadkin.com
dtatooles@colesadkin.com
csingleton@colesadkin.com
Firm ID: 49001
ARDC # 6307727
*Counsel for Plaintiff*

## JURY DEMAND

NOW COMES Plaintiff, by and through her counsel COLE SADKIN, LLC, and respectfully requests that this court hold a trial by jury on all merit-based claims herein.

Respectfully Submitted,

/s/Mason S. Cole

**COLE SADKIN, LLC**
Mason S. Cole
Dean J. Tatooles
Connor P. Singleton
20 South Clark Street, Suite 500
Chicago, Illinois 60603
(312) 548-8610
mcole@colesadkin.com
dtatooles@colesadkin.com
csingleton@colesadkin.com
Firm ID: 49001
ARDC # 6307727
*Counsel for Plaintiff*